134 Nev., Advance Opinion 28

IN THE SUPREME COURT OF THE STATE OF NEVADA

SOLOMON COLEMAN,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 71052

FILED

MAY 03 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of capturing an image of the private area of another person. Eighth Judicial District Court, Clark County; Kerry Louise Earley, Judge.

*Reversed.*

The Law Office of Travis Akin and Travis D. Akin, Las Vegas; Justice Law Center and Bret O. Whipple, Las Vegas,
for Appellant.

Adam Paul Laxalt, Attorney General, Carson City; Steven B. Wolfson, District Attorney, Krista D. Barrie, Chief Deputy District Attorney, and Elissa Luzaich, Deputy District Attorney, Clark County,
for Respondent.

BEFORE DOUGLAS, C.J., GIBBONS and PICKERING, JJ.

*OPINION*

By the Court, PICKERING, J.:

NRS 200.604 prohibits a person from knowingly and intentionally capturing an image of another person's private area without her consent, under circumstances in which she has a reasonable expectation of privacy. The question presented is whether the statute prohibits a person

18 - 16759

from copying, without permission, a consensually recorded video depicting sexual acts. We hold that such copying does not violate NRS 200.604 and therefore reverse.

## I.

Coleman was arrested and charged with several crimes involving two alleged victims. After a five-day trial, the jury acquitted Coleman of all charges except one: capturing an image of the private area of another person in violation of NRS 200.604. The facts related to that charge involve one victim, L.M.

Coleman, a Las Vegas police officer, responded to a scene where another officer had detained L.M. and a friend of hers. L.M. admitted she had outstanding warrants, and after finding drugs in L.M.'s friend's purse, the officers arrested both women. At some point during the arrest, L.M. gave Coleman permission to go through her cell phone, where he found sexual videos of her and her boyfriend. Coleman copied these videos onto his cell phone by recording the video while it was playing on L.M.'s cell phone. Sometime later, police had occasion to search Coleman's cell phone and they found the videos of L.M. and her boyfriend. Coleman was charged and convicted of violating NRS 200.604 and now appeals.

## II.

Coleman argues that the State did not put forth sufficient evidence to convict him under NRS 200.604 because the statute prohibits voyeurism and Coleman did not take a video of L.M.'s physical body directly but merely copied an existing video. The State responds that the statute prohibits Coleman's conduct because he captured an image of L.M.'s private area from a video on her cell phone, in which she had a reasonable expectation of privacy.

Determining whether the State provided sufficient evidence to convict Coleman under NRS 200.604 requires us to interpret the statute to understand what conduct it prohibits. Issues of statutory interpretation are questions of law reviewed de novo. *State v. Catanio*, 120 Nev. 1030, 1033, 102 P.3d 588, 590 (2004). If a statute is unambiguous, this court does not look beyond its plain language in interpreting it. *State v. Lucero*, 127 Nev. 92, 95, 249 P.3d 1226, 1228 (2011). When a statute is ambiguous, meaning it is susceptible to two or more reasonable interpretations, the court may look to extrinsic aids such as legislative history, extra-jurisdictional authority, and principles of interpretation, including the rule of lenity, to disambiguate its text. *Id.*

## A.

NRS 200.604(1) provides that "a person shall not knowingly and intentionally capture an image of the private area of another person: (a) [w]ithout the consent of the other person; and (b) [u]nder circumstances in which the other person has a reasonable expectation of privacy." "'Capture,' with respect to an image means, to videotape, photograph, film, record by any means for broadcast." NRS 200.604(8)(b). Under NRS 200.604(2), it is also illegal to "distribute, disclose, display, transmit or publish an image that the person knows or has reasons to know was made in violation of subsection 1."

NRS 200.604 is ambiguous because "capture an image" is susceptible to two reasonable interpretations. NRS 200.604(1) could be limited to videotaping, photographing, filming, or recording a physical person in real time, or it could also include the copying of a pre-existing image that displays a private area. The plain meaning of the word "image" offers no clarification, as it includes both proposed definitions. *Merriam-*

*Webster's* definition of "image" includes "a reproduction or imitation of the form of a person or thing," "a visual representation of something," or "a vivid or graphic representation or description." *See Image, Merriam-Webster* https://www.merriam-webster.com/dictionary/image (last visited March 29, 2018). Thus, we must look to NRS 200.604's legislative history and other relevant extrinsic aids for guidance.

B.

NRS 200.604's legislative history reveals that the Legislature created NRS 200.604(1) to criminalize the act of taking photos or video of a person's private area in real time, either in a public or private physical location, when that person had a reasonable expectation of privacy. The Legislature recognized that using small cameras or video recording devices to take pictures of people under their clothing or places of privacy such as dressing rooms or bathrooms had become increasingly common, yet Nevada law did not criminalize such activity. *See* Hearing on S.B. 10 Before the Senate Judiciary Comm., 74th Leg. (Nev., February 8, 2007) (statement of Senator Barbara K. Cegavske) ("I received a call from parents whose daughter was at a casino when she discovered a man with a camera on his shoe filming underneath the skirts of women and showing the pictures on the Internet . . . . There was another case of showgirls unknowingly filmed in their dressing rooms changing clothes . . . . In the case of the young daughter, the parents had the man arrested. Unfortunately he was released because such an activity is not a criminal act."); *id.* (statement of Stan Olsen, Las Vegas Metropolitan Police Department) ("There was also the case of [S.W.] who rented a house where the landlord placed hidden cameras in the bedroom and bathroom filming her in various stages of

nudity. Nothing could be done. A person has the right to privacy in the bathroom of their home.").

NRS 200.604 did not concern criminalizing the republication of consensually captured images of a person's private areas. *See* Hearing on S.B. 10 Before the Assembly Judiciary Comm., 74th Leg. (Nev., May 16, 2007) (statement of Assemblyman Marcus L. Conklin) ("We are trying to punish those who would make a living at doing this . . . . How do we get those people but not somebody . . . who in a social, consensual setting gets caught up in something ridiculous that happens and then somebody got mad."); *see also* Hearing on S.B. 10 Before the Assembly Judiciary Comm., 74th Leg. (Nev., April 18, 2007) (statement of Senator Barbara K. Cegavske) ("[Janet Jackson] had no expectancy of privacy [at the Superbowl]. She did not expect that people would not be taking pictures. This is geared more towards when you are in your home or underneath clothing.").

## C.

A state court may consult federal law to disambiguate a state statute that is identical or similar to a federal act. *See* Shambie Singer, 2B *Sutherland Statutory Construction* § 52:2 (7th ed. 2017) (citing examples of states applying federal interpretations to statutes adopted from federal acts). The Legislature adopted NRS 200.604 and the related definitions in NRS 200.604(8) from 18 U.S.C. § 1801 (2006), the Video Voyeurism Prevention Act of 2004. The federal act prohibits taking videos or photographs of a person's private area without consent in settings where that person has a reasonable expectation of privacy. 18 U.S.C. § 1801(1).

Congress passed 18 U.S.C. § 1801 to thwart "video voyeurism," as "[t]he development of small, concealed cameras and cell phone cameras, along with the instantaneous distribution capabilities of the Internet, have

combined to create a threat to the privacy of unsuspecting adults, high school students, and children." H.R. Rep. No. 108-504, at 3 (2004), *reprinted in* 2004 U.S.C.C.A.N. 3292, 3293. Such invasions of privacy occur when the voyeur takes pictures or video of an unsuspecting person's private areas in real time, such as in "locker rooms, department store dressing rooms, and even homes." *Id.* Consistent with the statute's text and history, federal courts have interpreted 18 U.S.C. § 1801 as prohibiting a person from capturing nonconsensual images of a person's private area in situations in which that person has a reasonable expectation of privacy. *See United States v. Johnson*, No. 2:10-CR-71-FtM-36DNF, 2011 WL 2446567, at *9 (M.D. Florida June 15, 2011) (defendant committed voyeurism under 18 U.S.C. § 1801 when concealing his cell phone in a bathroom and recording a 13-year-old female). 18 U.S.C. § 1801 and its interpretive gloss support reading NRS 200.604 to prohibit the act of taking photos or video of a person's private area in real time, a type of voyeurism, not to prohibit the copying or dissemination of a person's pre-existing consensual pictures and videos.

## D.

The rule of lenity dispels any lingering doubts as to the conduct NRS 200.604 criminalizes. Because "a fair system of laws requires precision in the definition of offenses and punishments," the rule of lenity holds that "[a]mbiguity in a statute defining a crime or imposing a penalty should be resolved in the defendant's favor," Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 296, 301 (Thompson/West 2012); *compare* Singer, *supra* at § 59:3 ("It is an ancient rule of statutory construction that penal statutes should be strictly construed . . . in favor of the persons on whom penalties are sought to be imposed."), *with Buschauer*

*v. State*, 106 Nev. 890, 896, 804 P.2d 1046, 1049 (1990) ("[T]his court will narrowly construe penal statutes where they are ambiguous."), *and Romero v. State*, 116 Nev. 344, 348, 996 P.2d 894, 897 (2000) (construing NRS 206.310 and NRS 193.155 narrowly to hold that the value of damages for partially damaged property resulting from malicious destruction "must be directly tied to the damage to the property," as opposed to any incidental effect).

In light of its history, the interpretation given the federal model from which it was drawn, and the rule of lenity, we conclude that NRS 200.604 prohibits capturing or disseminating an image of a person's private parts, taken without consent, under circumstances in which that person has a reasonable expectation of privacy. NRS 200.604(1) does not prohibit capturing an image of an image of a private area. Nor does NRS 200.604(2) apply where the original image was consensually taken.

### III.

With NRS 200.604's meaning clarified, we now decide whether the State provided sufficient evidence to convict Coleman. A sufficiency-of-evidence challenge asks "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Middleton v. State*, 114 Nev. 1089, 1103, 968 P.2d 296, 306 (1998) (internal quotation marks omitted).

The State did not present sufficient evidence to convict Coleman under NRS 200.604. At trial, the State proved that Coleman used his cell phone to copy L.M.'s video while it played on her cell phone. NRS 200.604 does not prohibit this conduct. Under NRS 200.604(1), the State needed to show that Coleman took a video of L.M.'s private parts, without

her consent, under circumstances in which she had a reasonable right to privacy. However, Coleman only copied a pre-existing video, and did not capture an image of L.M.'s private area in real time. And, pursuant to NRS 200.604(2), the State needed to show the original video depicting L.M.'s private area was not taken consensually. L.M. testified that the videos on her cell phone were consensual, thus NRS 200.604(2) did not prohibit their dissemination.

Our holding that NRS 200.604 does not criminalize copying a consensually recorded image of a sexual act makes it unnecessary to delve into the State's argument that, although L.M. gave her cell phone to Coleman, she did not thereby consent to his examination of its contents. *Compare Byars v. State*, 130 Nev. 848, 856, 336 P.3d 939, 945 (2014) ("Consent to a search . . . provides an exception to both the Fourth Amendment[ ] . . . and warrant requirements.") (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)), *with Riley v. California*, 134 S. Ct. 2473, 2485 (2014) (holding that the police generally may not, without a warrant, search digital information on a cell phone seized from an individual who has been arrested).

We reverse.

_____, J.
Pickering

We concur:

_____, C.J.
Douglas

_____, J.
Gibbons

SUPREME COURT
OF
NEVADA

(O) 1947A